**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No.:

**PARKSIDE APARTMENTS 2, LLC**, a Colorado limited liability company,

    Plaintiff,

v.

**AMCO INSURANCE COMPANY**, an Iowa corporation,

    Defendant.

**COMPLAINT AND JURY DEMAND**

COMES NOW Plaintiff Parkside Apartments 2, LLC, by and through its attorneys, Furtado Law PC, and submits its Complaint and Jury Demand against the above-named Defendant AMCO Insurance Company, and states as follows:

### I. NATURE OF THE ACTION

1. Plaintiff brings this action seeking economic and non-economic damages related to Defendant's breach of an insurance contract and statutory claims pursuant to C.R.S. §10-3-1115 and §10-3-1116 arising from Defendant's unreasonable delay and denial of timely payment for insurance benefits including recoverable depreciation.

### II. PARTIES

2. Parkside Apartments 2, LLC ("Plaintiff") is a Colorado limited liability company with its principal place of business at 13918 East Mississippi Avenue, #68214, Aurora, CO 80112. The members of Parkside Apartments 2, LLC are Jeff Young

and Remington Green. Mr. Young is domiciled at 12296 West Belleview Drive, Littleton, CO 80127. Mr. Green is domiciled at 7858 East 25th Avenue, Denver, Co 80238.

3. AMCO Insurance Company ("Defendant") is a foreign corporation with its principal place of business located in Iowa and is authorized to do business in Colorado.

## III. JURISDICTION AND VENUE

4. Jurisdiction is asserted pursuant to 28 U.S.C. §1332 and 28 U.S.C. §1391. The amount in controversy exceeds $75,000 and there is complete diversity of citizenship between the parties. Venue is proper because Defendant's insurance policy was purchased in Colorado and was intended to provide coverage for a property located in Colorado.

## IV. GENERAL ALLEGATIONS

5. Plaintiff sought and obtained an insurance policy, Policy No. ACP CPAA3026826459 (hereinafter "the Policy"), from Defendant for eleven apartment buildings and one office building located at 2340 West 76th Avenue, Denver, CO 80221 (hereinafter "the Property").

6. On or about August 31, 2016, a hail and windstorm hit Plaintiff's Property causing property damage.

7. On or about February 21, 2017, Plaintiff reported its claim to Defendant and Defendant issued Plaintiff claims number 702635-GE. Defendant then assigned its internal adjuster Phillip Hindman to Plaintiff's insurance claim to investigate the loss.

8. On or about February 2017, Plaintiff hired Philip Coutu with Rooftop Restoration and Exteriors, Inc. as its restoration contractor to perform repairs at its Property related to the date of loss.

9. On or about March 1, 2017, Mr. Hindmap inspected the Property for Property damage.

10. On or about April 28, 2017, Mr. Hindmap drafted his first estimate for Plaintiff's Property damage with a replacement cost value of $292,879.19 (actual cash value of $262,340.01). After other deductions and Plaintiff's deductible of $194,358.00 was removed, the amount payable on this estimate was $58,256.72.

11. On or about May 16, 2017, Defendant issued Plaintiff payment on its first estimate in the amount of $58,256.72.

12. On or about December 22, 2017, Mr. Coutu created an estimate for repairs at Plaintiff's Property related to the date of loss damages with a replacement cost value of $927,809.53 (actual cash value of $755,222.29). Upon information and belief, this estimate reflects the true covered benefits for Plaintiff's insurance claim that Defendant failed to initially estimate for.

13. On or about December 22, 2017, Mr. Coutu emailed this estimate to Mr. Hindmap and Mr. Coutu requested a site inspection to review his new scope of repairs.

14. On or about January 4, 2018, Mr. Hindmap emailed Mr. Coutu and acknowledged receipt of Mr. Coutu's estimate of repairs and requested that the parties meet onsite on January 24, 2018 to discuss the estimate.

15. On or about January 2018, Mr. Coutu completed the roofing repairs at Plaintiff's Property.

16. On or about January 24, 2018, Mr. Coutu met Mr. Hindmap at the property and Mr. Hindmap confirmed the roofing repairs at Plaintiff's Property were completed and yet Mr. Hindmap never released recoverable depreciation for this portion of the claim. Upon information and belief, during the inspection, Mr. Hindmap suggested some of Mr. Coutu's scope of repairs were not covered in Plaintiff's Policy under a cosmetic rider exclusion.

17. Upon information and belief, the Policy contains a cosmetic rider exclusion for siding and roofing and the provision is ambiguous as applied to metal surfaces.

18. On or about February 9, 2018, Mr. Coutu emailed Mr. Hindmap and requested Plaintiff's Policy for review of Defendant's cosmetic rider exclusion that the parties discussed at the January 24, 2018 site inspection.

19. On or about February 9, 2018, Mr. Hindmap responded that Defendant would not produce a copy of the Policy because it was privileged. However, Mr. Hindmap made the cosmetic rider available to Plaintiff via email.

20. On or about February 9, 2018, Mr. Hindmap retained Joseph Guerra with Envista Forensics as its engineer on the claim to determine if the metal siding trim elements around the windows, deck and roof level fascia were damaged from hail.

21. Upon information and belief, Mr. Guerra is a captured expert that Defendant regularly utilizes on insurance claims and Mr. Guerra provides Defendant with outcome-oriented results in return for financial compensation and/or continued

business. Upon information and belief, this working relationship between Envista Forensics and Defendant results in unreasonable investigations of insurance claims like the at-issue claim here.

22. On or about April 10, 11, 25, and 26, 2018, Mr. Guerra inspected Plaintiff's Property for damage related to the date of loss.

23. Upon information and belief, Mr. Coutu was present at the April 10, 2018 inspection of Plaintiff's Property and explained to Mr. Guerra that the hail affected all elevations of the Property and the size of the hail was 1.3-1.4 inches in diameter on the date of loss.

24. Upon information and belief, Mr. Hindmap also stated and verified that Mr. Coutu had previously completed repairs to the window screens, roof and metal drip edge. However, Mr. Coutu explained no repairs were previously completed to the metal gutters and downspouts, capping, fascia, deck metal, window trims, etc. as those items were still in dispute on the claim.

25. On or about May 2, 2018, Mr. Guerra submitted his report to Defendant which concluded as follows:

    a. The metal trim elements of the windows, decks and joints between the metal siding and brick veneer showed cosmetic damage from hail at all elevations of the Property.

    b. There was functional hail damage to the metal trim element surface coatings adjacent to the windows and at the decks at the west, south and east facing elevations of the buildings with no such damage observed on the north elevations.

    c. The roof-level fascia did not exhibit dimple indentations consistent with hail damage.

26. Upon information and belief, Mr. Guerra's conclusions are unreasonable because Mr. Guerra's definition of cosmetic damage vs. functional damage is based upon a single Haag Engineering Company report that was not peer reviewed or definitive on the subject. Specifically, Mr. Guerra refused to admit there was hail damage where he observed dimpled indentations in metal without a break in the underlying coating because of the Haag article. However, Mr. Guerra's report provides no documentation that he accurately or thoroughly examined for these fractures at various locations on the Property. Mr. Guerra's report also fails to provide supporting other documentation that the lack of fractures in the underlying metal coating where indentations in the dimple are present is not functional damage alone.

27. Upon information and belief, dimple indentations in metal surfaces at Plaintiff's Property constitute functional damage because water pools in the indentations overtime which results in rust. Furthermore, upon information and belief, the dimples cause structural changes to the metal that constitutes functional damage.

28. Upon information and belief, Defendant relied upon this report in denying Parkside's insurance claim and Defendant's reliance on this report is unreasonable because the underlying report is unreliable and/or the result of an outcome-oriented investigation by Mr. Guerra for Defendant.

29. On or about May 21, 2018, Mr. Hindmap emailed Mr. Coutu Mr. Guerra's engineering report. Mr. Hindmap also indicated that an Envista Forensic

consultant would contact Mr. Coutu shortly to finalize the scope of repairs on the project.

30. On or about June 30, 2018, Mr. Coutu emailed Mr. Hindmap asking why Defendant had yet to pay undisputed recoverable depreciation on items that he verified at the parties' last site inspection. Regardless, Mr. Coutu attached Parkside's sworn proof of loss with a replacement cost value of $927,809.53 (actual cash value $753,222.29).

31. Mr. Coutu also asked Mr. Hindmap how he intended to apply the cosmetic exclusion rider in the Policy as it is ambiguous with regards to its application to metal surfaces. Upon information and belief, Mr. Hindmap unreasonably failed to respond to Mr. Coutu's requests for depreciation release and further explanation of Defendant's denial decision on the claim.

32. On or about July 11, 2018 and July 25, 2018, Mr. Coutu left Mr. Hindmap a voicemail for an update on Defendant's release of recoverable depreciation. Upon information and belief, Mr. Hindmap never responded to these messages.

33. On or about July 25, 2018, Mr. Coutu emailed Mr. Hindmap and asked for Mr. Guerra's estimate and report related to the parties' June 2018 inspection.

34. On or about August 1, 2018, Mr. Coutu emailed Mr. Hindmap and requested an update on the claim given the statute of limitations was coming due under the Policy. Mr. Coutu also asked for an update on Mr. Guerra's new report, Parkside's submitted sworn proof of loss, Envista Forensics' revised estimate, further discussions on disagreements in the scope of repairs to aid settlement

discussions and Defendant's release of recoverable depreciation due in January 2018.

35. On or about August 28, 2018, due to Defendant's failure to pay recoverable depreciation and the claims unfinished adjustment status, Mr. Coutu emailed Mr. Hindmap and requested a tolling agreement on the claim. Upon information and belief, Defendant did not timely respond to this request for a tolling agreement and Plaintiff was forced to file suit to preserve its legal rights in this matter.

36. Although Plaintiff provided Defendant with the necessary documentation to recover covered benefits, Defendant has unreasonably delayed and denied Plaintiff's claims for benefits by failing to conduct a reasonable investigation of Plaintiff's damages and failing to properly adjust the loss with all available information.

37. As a consequence of Defendant's conduct in unreasonably delaying and denying Plaintiff's claims for benefits due and owing under the Policy, Plaintiff has incurred and continues to incur damages.

## V.   FIRST CLAIM FOR RELIEF
(*Breach of Contract*)

38. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

39. The Policy creates a contract of insurance.

40. By its actions, as described above, Defendant breached the contract of insurance by failing to consider all relevant information submitted by Plaintiff on the claim and failing to pay covered benefits under the Policy.

41. As a direct and proximate result of said breach, the Plaintiff is entitled to damages in an amount to be determined at trial.

## VI.     SECOND CLAIM FOR RELIEF
*(Violation of C.R.S. §10-3-1115 and Relief Pursuant to §10-3-1116)*

42. Plaintiff incorporates the allegations contained in the paragraphs above as if fully set forth herein.

43. C.R.S. §10-3-1115 forbids an insurer from unreasonably delaying or denying payment of a claim for benefits owed to or on behalf of a first-party claimant.

44. Plaintiff is a first-party claimant under C.R.S. §10-3-1115.

45. Defendant has denied the Plaintiff's claim without a reasonable basis within the meaning of C.R.S. §10-3-1115.

46. C.R.S. §10-3-1116 provides that a first-party claimant whose claim has been unreasonably delayed by an insurer may bring an action in Colorado district court to recover reasonable attorneys' fees and court costs and two times the covered benefit.

47. Because Defendant's actions, as described above, violate C.R.S. §10-3-1115, Plaintiff brings this claim to recover its reasonable attorneys' fees and court costs and two times the covered benefit, as allowed under C.R.S. §10-3-1116.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff asks that this Court enter judgment in its favor and against Defendant on its Claims for Relief as follows:

1. Damages for Defendant's breach of contract;
2. All unpaid covered benefits owed under the party;
3. Two times the amount of all covered benefits under the Policy;

4. Costs, expert witness fees, and attorneys' fees per statute incurred in prosecuting its claims;

5. Pre- and post-judgment interest; and

6. For such other and further relief as this Court may deem just.

**PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL CLAIMS**

Respectfully submitted this 30th day of August 2018.

FURTADO LAW PC

*/s/ Nathanael Archuleta*
David Furtado, Esq.
Nathanael Archuleta, Esq.
Katherine Goodrich, Esq.
Furtado Law PC
3773 Cherry Creek North Drive, Ste. 755
Denver, CO 80209
Telephone: (303) 755-2929
Email: Dfurtado@furtadolaw.com
Nathanael@furtadolaw.com
Katie@furtadolaw.com
Attorneys for Plaintiff